Well, good morning, everyone. Good morning. Good morning. Good morning. Good morning. Good morning. I'm not awake. Yeah. We're looking forward to your arguments this morning. Before we actually begin our first arguments, Judge Rollins and I would like to thank and acknowledge our visiting judge, Judge Ronald Gilman. He's visiting with us from the Sixth Circuit, and his chambers are in Memphis, Tennessee. So, Judge Gilman, thank you. Pleased to be here. Let's see. Our first argument this morning is Rice v. Morehouse, 18-35459. Thank you, Your Honor. May it please the Court. I'm Craig Durham. I'm appearing on behalf of the appellant, Lee Rice. In this matter, just to orient the Court to what this case is, this is an appeal from the District of Idaho after a jury trial on an excessive force claim, which arose out of an incident that occurred late on Christmas night in 2011. I know the Court's familiar with the facts, so I won't really belabor those today. We've got it. We've seen the video. You've seen the video. Well, there you go. So I'll jump right into it. I first want to address the Ada County defendant's jurisdictional argument. Ada County is arguing that the first issue in our brief is not properly before this court because it was not included within the notice of appeal, and because of that, this Court can't hear it. It's true, Your Honors, there is a technical violation of Appellate Rule 3C, but it's just that. It's a technical violation. This Court's case law has long held that the Court liberally construes these kinds of issues, and if the Court can construe from the notice of appeal and the briefing that there was an intent to appeal the issue and there was notice to the other side and there is a lack of prejudice, then the Court will review that issue, and that's what we have here. Mr. Rice intended to appeal this claim. How do we know that? Well, this was not some minor issue in the Court below. This was partial summary judgment, judgment as a matter of law, on a piece of this incident as to the two Ada County deputies. It was fully litigated. It wasn't some subsidiary discovery issue or something like that. It was a major component of the case below. This is your takedown argument?  Against Morehouse and Schaefer? Yeah, exactly, that Schaefer and Morehouse on the takedown part of it. Why don't you jump to the—let's assume that there's not a jurisdictional problem. Okay. Why don't you jump to the merits? I'll do that, Your Honor. Of course, we are asking the courts to reverse and remand on the merits, and Judge Gilman, as you just addressed, there were two parts to this incident. There was the takedown. Deputies Morehouse and Schaefer were escorting Mr. Rice around the car and took him down the pavement. And then there was what was called the scrum, which is where all the officers kind of joined in. And that's the part of the case that went to trial? That went to trial on one piece of it, yes. The takedown did not. Right. Because Judge Windmill cut that out of the case. He said there was no—as I understood his ruling, he said there was actually no constitutional violation. Correct. He believed there was not. And even if there were, the officers were entitled to qualified immunity. Qualified immunity, absolutely. And that's what Ada County is arguing here. But we think that Judge Windmill missed it, missed the case law from this court as applied to the facts in this case. On which prong? On both, Your Honor, on both. So tell us the closest case that establishes there was a constitutional violation here. Well, I would direct the court's attention to the— I think it's called the Blankenhorn case, which is a case out of Washington, I think. And in that case, if memory serves me correctly, police officers had been called to a mall where there was some kind of trespassing complaint that had been made. They encountered this individual who they know to be a gang member. And it's somewhat similar to this case where they're asking for his identification, asking him questions, why he's there. That individual is, in fact, more verbally aggressive, I would suggest, than Mr. Rice was in this case. He was cursing at the police officers. He was using profanity. But, counsel, in this case, Mr. Rice refused to exit the vehicle after being told. Do you have a case with similar facts to that when a person has to be forcibly removed from a vehicle? I don't have a case that is 100 percent on point with that, Your Honor. I have to analogize it to things like Blankenhorn, where the individual was not in a car, he was standing, but he was tackled. It was essentially a takedown. Let me, let me. So in the first prong, as I read the briefs, my understanding is that your contention was that there was a dispute of fact over whether or not Mr. Rice resisted after he was dragged out of the car. I think that's, I think that's correct, or the extent to which how, what this resistance arises to. We're saying it's just mere passive. To the extent there's resistance, it's passive resistance, Your Honor. My, I thought, as I read his declaration, I thought he said he did not, once he got, once he was pulled out of the car, he didn't resist. Once he, I think that's correct. Once he was pulled out of the car, he was moving towards the back of the vehicle with the officers. So, but the other officers say he did resist. Correct. Right? Yes. They lost, they lost their arm hold. Yeah, there was some kind of, yes. Because of his resistance, he wasn't cooperating, right? Correct. Okay. So my understanding is that where there, at least when you get down to qualified immunity, is that we have to assume all the facts that are disputed in favor of the, the non-moving party, is that right? That's absolutely true. Unless there's other indicia, you know, there's other clear facts that, that suggest a different, that that may not be correct, that his version may not truly be correct. And so I look carefully at the video, because the video was before the court on summary judgment, and I couldn't tell from that video what happened when they pulled him out of the car. Yes. In fact, you can't even tell how that happened. Right. Because that he offered to exit the vehicle, and they then pulled him out. They say he refused to get out of the car. So they were just doing what they had to do, which was to get him out. Yes. No, I agree with you 100%. So let me ask you this. So if we assume the facts are true as he relates them, what, your argument is, is that when they walked him back around the car, around his car, and then took him down, that when you look at all the factors for determining whether or not that was excessive force, that a reasonable jury could conclude that it was an exercise of too much force in violation of the Constitution. Is that kind of? That is exactly our argument. Okay. Yes, Your Honor. So then the district courts, so maybe on that first prong, Judge Windmill was not correct. But you then have to get to the next step in the analysis, which is, well, okay, why aren't these officers entitled to qualified immunity? And it seems as though if there was any resistance, why wouldn't they be entitled to qualified immunity? Well, as we said in our brief, Your Honor, it's long been the case, and I think this is in the Blankenhorn case, in the Gravelette v. Blondin case, that the right to be free from nontrivial force while engaging in passive, even passive resistance, whatever that means, is clearly established and was clearly established from 2008. That's a quote out of, I think it's Gravelette Blondin. And that's what we're relying on, that, you know, these officers would have noticed, if that's the law of this circuit, that you can't use more than nontrivial force, you know, push or shove, that's trivial, but taking somebody to the ground, depending on what kind of shape that person is, what age they are, what medical, there's a risk of significant injury. That's more than nontrivial force. Counsel, hasn't the Supreme Court admonished us not to define the clearly established law at a high level of generality, and isn't that what you're doing right now? To answer your first question, yes, the Supreme Court has said that. As to the second question, no, I don't believe that's what we're doing here. And if Your Honor is referring to the case, I think it was the city of… Escondido v. Emmons. Escondido, yes, a recent case where this court had found that the officers were not entitled to qualified immunity. That went up. The Supreme Court procuring sent it back. But this court in that case, it was an unpublished case, and I think they just said something very basic like, the right against unreasonable force has been clearly established, or something very, very broad. It's in our brief, but I can't remember. I'm paraphrasing. That's not what we're doing here. I mean, we have cited to this court Blankenhorn. We've cited to this court Gravelette Blondin. There's the IRS case that I can't remember the name. The facts have to be, in my reading of the Supreme Court decision, is that the facts have to be pretty close in order for it not to be a high level of generality. So just saying that an individual has the right to be free from excessive force when there is only passive resistance, I'm not sure gets you where you need to be. Well, that could be a level of generality, but I'm also citing the cases where we're saying those facts are similar, like the Blankenhorn case where they tackle the individual in the mall. So what's the clearly established principle of law that you are espousing to us from those cases? If there is something, if there is nothing more than non-trivial, or excuse me, if there's only passive resistance, the clearly established law is that a jury could find that it is excessive force to take somebody down to the ground, to tackle somebody. Without looking at all of the other facts, whether or not it's a traffic stop, what has happened previously. So you're just saying if there's only passive resistance, then only non-trivial force can be used. I'm saying if there is a reasonable view of the facts from which the jury could find that this was no more than passive resistance, then yes, that should go to the jury. One of the complaints I have, frankly, with the U.S. Supreme Court on these qualified immunity cases is it doesn't have to be the exact same fact pattern, because then you're never going to. But it's got to be somewhere in the ballpark. Yes. Because the Supreme Court has repeatedly sent our cases back when we've denied qualified immunity and have done a pretty general statement regarding the use of force. I'm painfully aware of that, Your Honor. They have narrowed it, but it's not to the point where it's got to be. You have to have this exact fact pattern in order for these officers to be on notice of this. It's got to be close enough where a reasonable officer should have been. I think that's correct, Your Honor. There's a case called Bryan v. McPherson. Are you familiar with that case? The taser case? I think so, Your Honor. If you give me a little more facts. The plaintiff was in a vehicle and tried to traffic stop and then refused to cooperate, just like this. Refused to tase, Your Honor. Refused to cooperate, and the officer said, you know, either get out or we're going to pull you. You know, just like here, we're going to take you out. And then they said, if you don't cooperate, we're going to tase you. He didn't cooperate, and they tased him. And in that case, we did both prongs of the analysis. Well, could this be an instance of excessive force in violation of the Fourth Amendment, or alternatively, is it qualified immunity? And we said it could be a reasonable jury could find an excessive force violation. And one of the key – there was a key issue in that case that's not here, which was whether or not use of a taser is intermediate force, the level of how you treat it in terms of the force scale. But we did say it could be a violation. And then we said, however, with qualified immunity, there were no cases on point, and we said the officers were entitled to qualified immunity. Correct. And I don't remember the year of that, Your Honor, but I want to say it was 2010. Was it before this case? Yes. So how does that case fit into this? Well, if it was before – I mean, obviously, we don't have those exact facts. No, of course not. There wasn't a taser, but if it was before this case, then I would say whatever principles came out of that case, that these officers would have been presumed to have known them. They would have been presumed to know about the use of a taser. Right. But does that tell them anything about the use of a takedown procedure? Probably not, Your Honor. I'm not relying on that particular case. I think the cases that we did cite in our brief are closer factually, and I think the Court can rely on those cases because they were takedowns. Well, this case was fairly good for you, and it was excessive force. It was held to be excessive force. Yes. Tell me this. I'm just curious, why did Mr. Rice act sort of obnoxiously in the first place when pulled over and wouldn't roll down his window and would only put his driver's license through the window and wouldn't comply with the officer's request to see his driver's license? Well, if you kind of back up from how this encounter started, and I think this is in his declaration and his trial testimony, he's coming home late at night with his family. He's driving across Boise. At first he didn't know this was a police officer that was following him, but somebody was following him pretty closely, shining their brights in his car. He would change lanes. They would change lanes with him. I think he was becoming scared and upset. And when they pull him over, he's, I think, rightfully like, why are you doing this? What is going on? So there was a sense of a little agitation and upset, I think, from how the encounter began. By the time the officer pulled him over, he knew he was dealing with an Idaho officer. Yes, at that point he did, yes, of course. He still wouldn't show her the driver's license. No, I mean, the record's pretty clear. He was uncooperative at the beginning. He wouldn't show his driver's license. He didn't want to show his registration. But by the same token, you know, it was fairly obvious he was traveling with his family. There were teenage girls in the back seat. He wasn't physically aggressive. He wasn't verbally threatening. I'm just curious, when he was taken down, was he injured? Yes. He injured his knee, and this became, and I'm going to run out of time, so I really can't get to the second issue in the brief, but this became an issue is, like, his injuries and the causation, his ability to prove that at trial, the judge had excluded all of his expert testimony. And he also had some post-traumatic stress from this incident. I'll give you some time for your bud, but let's hear from the other side. Okay, thank you, Your Honor. Thank you, Your Honors. May it please the Court, Counsel. I'm Scott Muir. I represent the appellees Mark Abercrombie and Jeff Hill, and I'm going to take two minutes, or excuse me, four minutes to address issue two, which is whether the district court abused its discretion in excluding Rice's proposed experts at trial for failure to comply with the case management order. This is the one issue that's common to all four appellees. It's important to take a look at the timeline in this matter. The incident around which this lawsuit revolves occurred on December 26th of 2011. The complaint was filed on October 10th of 2013, and an amended complaint on January 23rd of 2014. The document that's the crux of the argument here is a case management order that was entered April 4th of 2014. In that case management order, plaintiff's expert disclosure deadline was set for September 15th of 2014. In that order, it said pursuant to Local Rule 26.2b, expert witnesses will not be allowed to offer any opinion not disclosed in the mandatory Rule 26 disclosures, supplementations, or deposition. So at that point in the case, defendants had filed motions for summary judgment, and they were before the court. So the court entered an order on December 5th of 2014, extending the discovery deadline to a date to be determined at a status conference held soon after the court issues its decisions on the motions for summary judgment, which were heard on October 1st of 2014. It further noted in that order that any party seeking to extend the expert disclosure deadline shall file a motion seeking that relief. Was Mr. Rice represented by counsel at that time? At that time, yes, he was. He would have been represented by Dennis Charney at that time, I believe, Your Honor. The summary judgment decisions came out, and ultimately this was taken to the Ninth Circuit on those summary judgments. The Ninth Circuit decision ---- Did the district court enter a stay order at that point when there was an appeal of the qualified immunity ruling? Nothing occurred at that time, Your Honor. I don't believe that the court actually did any formal stay. So it was just informally stayed? Right, right. He didn't push it to trial? No, no, no. So the Ninth Circuit had a decision in November of 2016, and then it was still delayed. The court getting it remanded back, did a trial-setting order on September 29th of 2017. At this time, Lee Rice was pro se. What would have been the harm to your officers if, in fact, Rice had been allowed to introduce the expert witnesses? Well, we wouldn't have had a chance to prepare, Your Honor. The timing is such that he disclosed these, as it turned out, two months before the trial was set, and then it got vacated for another couple of months. So before he even disclosed these experts, it was down to trial date. There was only four months left. They hadn't even filed any reports. So we wouldn't have had time to take depositions and set up our experts to rebut that testimony. So then in December of 2017, Lee Rice got an attorney, Richard Harris, who did a notice of appearance, and that's when, in early December of 2017, he disclosed several potential expert witnesses that he wanted to present. Did he ask the district court to extend the time? No. There was an extension of time on the discovery deadlines, but it is very clear in all the orders that that did not cover the experts. No, but did this new counsel who came in and then disclosed, he could have gone in at the same time to the district court and say, I've got experts, I need an extension. No, and he did not do a motion to say, I need to disclose these experts. He did not do that motion. He just disclosed them. He disclosed them in interrogatories, and we found out about them in depositions with Lee Rice that he was being treated by some doctors and had some use of force experts. Okay. So since my time is running, let me. You're over your time. If you only wanted to take four minutes, because counsel over here is getting very anxious. He's getting a little edgy. So make your final point. To sum it up, this is Rule 37C. Parties not allowed to use information and witnesses that they did not disclose in compliance with Rule 26. The only excuse for it would be substantial justification or that it's harmless error, and neither of those is shown in this case. Okay. Thank you, counsel. Thank you. Good morning. May it please the Court. My name is Erica White. I represent the appellees Ada County Sheriff's Deputies Delmore, House, and Nick Schaefer in this case. As already discussed, there are two issues before the Court today. The first is whether the district court erred in granting summary judgment to the appellees based on qualified immunity with regard to the controlled takedown maneuver they used on the appellant Lee Rice. And second, whether the district court erred in excluding the plaintiff from calling any expert witnesses due to his failure to meet the expert disclosure deadline. As a preliminary matter, I would like to first quickly address a jurisdictional issue that has been raised before this Court. Because the appellant failed to identify the order from 2015 granting the appellee summary judgment in his notice of appeal, this Court does not have jurisdiction over that matter. Federal Rule of Appellate Procedure 3 provides that notice must be designated, that the notice must designate the ---- How were you injured? Your Honor ---- I don't understand. I mean, you got to brief it. It's fully briefed, and the whole ---- it's completely vetted. Yes, Your Honor, but it is a two-part test. That is the exception to that. Well, no, you didn't answer my question. How were you ---- How have you been prejudiced? Your Honor, the notice of appeal was filed in May of 2018, and we did not receive the actual appellate brief until almost a year later. All right. There was a year delay from when we ---- How did that prejudice you? Because we ---- You look like a very ---- You seem like a very competent, highly competent lawyer.  Where is the prejudice? We did have the opportunity to ---- I don't see what the prejudice is. Your Honor, you're correct. We did have the opportunity to fully brief the matter, and we're here arguing it today. However, we should have been entitled to more time. Did you ask for more time from us? We received an extension on our brief. However, the rule ---- Did you ask for any more time? Was that not enough time? We were able to put our brief together and prepare for today's argument, Your Honor. You better move on to your next argument. Thank you, Your Honor. Okay. To the extent that the court is going to overlook the failure in the notice of appeal, the court should still affirm the district court's grant of summary judgment to the appellees. First of all, the qualified immunity analysis consists of the two prongs, number one, whether there was a constitutional violation, and number two, whether the right to be free from the force used was clearly established. In this case, the district ---- Do you agree that on the first prong there's a disputed issue of fact over whether or not he resisted? There is a dispute over the level of resistance. Correct. And on a motion for summary judgment ---- When I read his declaration, he seems to say that he didn't resist, that he was cooperating. And if you review the video, you can see that he was not cooperating. He was resisting. You can see that during ---- I looked at that video at least three times, and I couldn't tell what was going on. It is difficult to see, but if you continue to watch it and you really focus in on what is happening in there, you can see that he was resisting. And I think it's also you have to take the totality of the circumstances that the officers were facing that night. First of all, they were ---- Trooper Murakami had pulled him over at approximately 3.30 a.m. on the interstate in Boise, Idaho. He parked his car on the fog line, which forced her out into the lane of travel. She repeatedly asked him for his driver's license, his proof of insurance, his registration, and he repeatedly refused to provide it. There doesn't seem to be any dispute over that. Correct, Your Honor. That's not my ---- So my concern is, is there a dispute of fact over whether or not he resisted? I think there is a dispute over the level of resistance. And I think what is important for this Court to consider is that, although we have the two-prong analysis, the Court can look at those in either order. And I would urge this Court to consider the second prong first. And when you do so, it's an easy analysis. First of all, when the appellees brought their motion for summary judgment and asserted that they were entitled to qualified immunity, the appellants at that time had the burden to come forward with case law that clearly established that the force used by the appellees in those circumstances was unconstitutional. And you'll see in the appellant's opposition to the summary judgment, which has been provided in the supplemental record by Morehouse and Schaffer at S.E.R. 061 through 076, that he completely failed to meet his burden. He failed to cite even to a single case to show the Court that the law was clearly established. The district court here did not fail to properly evaluate the cases cited by the plaintiff, as he didn't cite any. And nor did the Court properly apply the ---- fail to properly apply the law. The appellant failed to satisfy his burden at summary judgment. He's tried to rectify that on appeal by citing case law for the first time here on appeal. He is seeking to argue the merits of his opposition to summary judgment for the first time on appeal. I mean, it's an argument. It is an argument, but he had the burden. He hasn't waived that argument here. He had the burden at summary judgment, though, to come forward with the case law to clearly establish the law. So whether or not an officer is entitled to qualified immunity is purely a legal question. Correct. Correct? Yes. So the district court did address this, and he ---- Litigated in the district court, and he comes up here, and they're just, you know, they're just expanding on their argument. That's all. And the district court ---- Well, let me ask you this. Why, you know, so counsel, when he was arguing, cited to Blankenhorn. What's wrong with ---- Why doesn't that case help him? Blankenhorn is not sufficiently on point to clearly establish that so that every reasonable officer in these circumstances would have believed that the force used was unconstitutional. Didn't this court in Emmons specifically say that Blankenhorn was not sufficiently on point for a passive resistance case? It did. That is correct. Yes. The appellant in the city of Emmons v. City of Escondido case cited Santos v. Gates, Meredith v. Eris, Blankenhorn v. City of Orange. And in that case, the court found that the circumstances of ---- in Emmons, excuse me, the court found that the circumstances of those cases were not sufficiently on point to clearly establish that the conduct of the officers in Emmons was a violation of the plaintiff's rights. So just as in Emmons, the appellant in this case relied on those same three cases to clearly establish the law in this case. And just as in Emmons, this court should find that those cases are not sufficiently on point. What about Bryan v. McPherson? Bryan v. McPherson was a case involving a suspect that had been pulled over and ---- Another individual who refused to cooperate with the police when they ---- Refused to cooperate and he was tased. I don't think that that is a case that is still ---- Well, it's an example of excessive force where somebody who was resisting. The force used in that is much more significant than the force that was used here. It is not sufficiently on point to clearly establish that the officers in this case could not use a controlled takedown maneuver of the appellant under these circumstances. What do you do about the case of Gravelette Blondin, the 2013 Ninth Circuit case, where it's quoted the right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008? Doesn't that give the officers, put them on notice that if the jury were to decide that it was non-trivial force and engaging in mere passive resistance? No, Your Honor, that does not clearly establish the right here. The U.S. Supreme Court specifically stated that the Gravelette case defined the right too broadly. You cannot define the right as there is that an officer cannot use non-trivial force on a suspect that is only passively resisting. And even in the Gravelette case, it goes on to further analyze the facts of that case. In the Gravelette case, the plaintiff suspect ---- excuse me, the plaintiff in that case was a neighbor of the suspect. He came over. He was a bystander, and he was tased. That's not the case that we have here. And even the cases cited too by the Gravelette case were the force used in those cases, which was much more significant in that the officers used pepper spray in a case. They used a taser in a case. They used beanbag projectiles at close range on suspects that were only passively resisting. Those cases are not sufficiently on point to clearly establish to the officers in our case that the force that they used was unreasonable. Let me give you another one. Go ahead, Judge. Go ahead. On Riemann and Emmons, we specifically cited Gravelette as one of the cases that was not clearly established for purposes of our analysis in Emmons. Isn't that right? Correct. Yes, I think the ---- it was cited too in the first case at the Ninth Circuit. The U.S. Supreme Court, in its evaluation, said it was not ---- that was not sufficient enough to clearly establish the right. And then on Riemann, we recognize that the Supreme Court had said that Gravelette was not sufficient to clearly establish the law for that case. Yes, Your Honor. Well, maybe we need to say that a takedown when there's non----- when there's passive resistance can constitute excessive force. But that would be inconsistent with our law. I'm just, you know, because it seems like we've said ---- I mean, we've all but said that directly. Didn't we say that in ---- You know, one of the issues in Bryan v. McPherson was whether or not a taser could be viewed as an intermediate level of force. I mean, we said that a jury could conclude that. But we had no cases dealing with tasers. And I think that's ---- So the concern there was that there was ---- we didn't have any law on the issue of how do you treat tasers, what's the degree of force and whatnot. It seems here that we do have law on a takedown procedure, which is fairly common and has been around for years, and the officers testify that a takedown is one of the most useful tools of control that the officers have. It's a very easy maneuver for them to use. Yes, Your Honor. It is known as a maneuver that is actually used to reduce the risk of injury or other damages that you might have with the use of a taser or pepper spray, something of that nature. And I think what you're getting at there is why it's so important that we have a case sufficiently on point to tell our officers what is reasonable and what is not. Well, in a case that's 100 percent on point, does the law really require that? It does not have to be exactly the same, but it has to be very close. It has to be so clear that every reasonable officer would know that their actions were unconstitutional. It's not that some might know or they can maybe want, you know, but it has to be clearly established that every reasonable officer knows. Did you want to say real quickly anything about the second issue in the case? Yes, Your Honor. Thank you. Make it very quick, because I'll let you go over your time. I understand. Yes, very quickly. Again, I think for the first time on appeal, the appellant is trying to make a new argument. He's trying to urge a different standard than what he argued to the district court. He is trying to ask this court to require a finding of willfulness, fault, or bad faith on the appellant in missing that deadline, and that's not what is required, and it's not what he argued to the district court either. He filed three motions to reconsider and had the opportunity for oral argument at the district court on the morning of trial, and he never brought up that higher standard, and it's not appropriate in this case anyway. That higher standard only would apply if the exclusion of the expert witnesses resulted in actual dismissal of his case. That's not what happened here. The appellant received a five-day jury trial. Okay. Thank you, Your Honor. All right, thank you. Thank you. Just a couple of quick points, Your Honor. On the Emmons case, the city of Escondido case, what this court said in the initial appeal that the Supreme Court didn't like was, the right to be free from excessive force was clearly established at the time of the events in question. I mean, that doesn't tell us anything about the specific facts or the application of the previous case law to those facts. But what did we say on Remand? Well, on Remand, Your Honor, I think the court did address the Gravelate v. Blondin case. And it addressed the Blankenhorn case and said that those cases were not sufficiently similar, that the plaintiffs had to be sufficiently similarly situated to constitute clearly established law. And that's true. And, again, I don't want to quibble with exactly how precise those facts have to be. But I do believe that our case is similar to Blankenhorn. But in Emmons, we said specifically that those facts in those cases were not sufficiently similar on passive resistance to constitute clearly established law. Well, as to the facts of Emmons. And what happened in Emmons was there was a domestic disturbance call. When the police officers got there, there was some kind of indication that somebody was in distress inside of that house. Emmons, or whoever the individual was, came out of the house, brushes past the officers. And he's essentially fleeing at that point. And he's taken down. So I would suggest that those aren't our facts either. And then he was handcuffed. He was quickly handcuffed. So this case. Well, in Emmons it didn't say that the plaintiff pushed the officer. Where's that in the case? I'm going from memory, Your Honor. So let me find it. I've got it here. Bear with me for one minute. In fact, it says Mr. Emmons was pulled out of the door and tackled to the ground. Not that he pushed the officer. Because he tried to brush past Officer Craig. Officer Craig stopped him. Where are you? I'm sorry. I'm on, it would be page 502 under the courts. Which version? Are you 921? I'm sorry. This is a Supreme Court case. I'm looking at, I said our case. On remand. Oh, okay. On remand. Okay, we're looking at different opinions. I was looking at the Supreme Court opinion. And it says he brushed past Officer Craig. Officer Craig stopped the man, took him quickly to the ground and handcuffed him. But you said he was essentially fleeing. Well, he was trying to leave the domestic disturbance call, Your Honor. I mean, I'm making an inference there. And I don't want to, you know, I guess we can agree to disagree on this one. But I think we have cited cases that are. The case says what it says. On remand. Yes, absolutely. Absolutely, Your Honor. I just wanted to, and I'll leave that on that issue. I just wanted to briefly address the second issue because I didn't have an opportunity to do that. Make it quick. Very quick, Your Honor. We're not trying to argue that you do have to show some kind of higher level of willfulness or bad faith or that sort of thing. This court has said if a discovery sanction results in dismissal, then you do need to do that. We're not saying this resulted in dismissal. But it was close. It was close. Because Mr. Rice had to defend here against the State's expert on use of force with just basically his own testimony and his counsel's argument. And it was essentially that was cut out of his case. And so we're just saying that because of the convoluted nature of how this procedure went, Mr. Rice was pro se, and then he had an attorney, and that attorney left, and then he was pro se,  and I'm not going to stand here and defend those attorneys and say he was well served, but what would have been a 90-day continuance? But can we say it was an abuse of discretion for the district court to go the other way? I believe it was, Your Honor. I believe it was an abuse of discretion because of how this was just not a fair trial. And I'll just leave it at that, and I really appreciate the court's time. Thank you. Okay, and we appreciate your willingness to provide pro bono assistance. Thank you. Thank you, counsel. We appreciate your arguments this morning. The matter is submitted.
judges: Gilman, Paez, Rawlinson